**In re Walter Stanley NOA and Charlene Nancy Noa, Debtors.**

**Bankruptcy No. 86–00183–BKC–TCB.**

United States Bankruptcy Court, S.D. Florida.

Oct. 14, 1987.

Robert E. Dillon, Miami, Fla., for debtors.

Jeanette Tavormina, North Miami, Fla., trustee.

Timothy L. Hass, Gaylord, Mich., David R. Softness, Miami, Fla., for 1st Nat. Bank of Gaylord.

### ORDER DENYING MOTION TO REOPEN CASE AND MOTION TO SET ASIDE DISCHARGE

THOMAS C. BRITTON, Chief Judge.

This no asset chapter 7 case filed January 27, 1986, was closed July 10, 1987, fourteen months after the debtor received his discharge, May 7, 1986. In September

1987, the debtor moved under 11 U.S.C. § 350(b) that this closed case be reopened in order that he might amend his bankruptcy schedules to include a judgment debt he owed in the amount of $14,000, but which he failed to schedule in his bankruptcy papers. Because of that failure, the unscheduled obligation has not been discharged. § 523(a)(3). Movant's purpose now is to obtain the discharge of that debt. The affected creditor has responded and the parties were heard October 13.

Although neither party offered any witnesses, the facts necessary to a disposition of the motion are accepted by both parties.

In *Samuel v. Baitcher* (*Matter of Baitcher,* ), 781 F.2d 1529, 1534–35 (11th Cir.1986), the court followed *Matter of Stark,* 717 F.2d 322 (7th Cir.1983) in holding that when, as in this case, a debtor seeks to reopen a case to obtain a discharge of a debt which existed at the time of bankruptcy but which was not scheduled by the debtor in the bankruptcy case, the motion must be granted unless:

"it is concluded [by this court that] the original omission was not inadvertent but by intentional design."

The burden is on the debtor/movant to "show absence of fraud or intentional design". *Baitcher* at 1534.

The claim or debt was incurred when the debtor executed a note and security agreement to a Michigan bank in May 1977 to buy four ambulances for his business. The ambulances were pledged as collateral and the debtor agreed that the vehicles would not be removed from the county without the bank's consent. He went out of business by the end of that year and took all of the ambulances with him, without the bank's consent, to St. Petersburg, Florida.

In the fall of 1977, three of the four ambulances were returned to the bank in Michigan by the debtor's parents who lived in St. Petersburg. The fourth ambulance was not driveable.

In October 1980 the bank filed suit in Michigan to establish its claim for the deficiency owed by the debtor after crediting his account with the value of the three returned vehicles. The bank was unable to effect personal service, but received leave to make constructive service under Michigan law and obtained a default judgment in June 1981.

The debtor concedes that he learned of the judgment in July 1986. Debtor's motion ¶ 3. In November of that year he moved in Michigan to set aside the default judgment on the ground that the court lacked jurisdiction over his person. In an opinion dated May 27, 1987, the debtor's motion was denied.

The debtor states that he did not list the claim or debt of the Michigan bank in his bankruptcy schedules because he thought the debt had been fully satisfied by the return of the three ambulances. He has provided no document or other basis for that conclusion.

I reject that excuse and find from the record before me that this debtor deliberately and consistently avoided this creditor ever since he defaulted on his note and unlawfully moved the four ambulances to St. Petersburg in 1977 until he filed this present motion.

He established at least seven different places of residence during the first four years he was in Florida, before he settled in Miami in January 1981. When he subsequently returned to Detroit, plaintiff made at least 19 attempts over a 10-day period to serve him personally at the debtor's then residence in that city. The process server was met with the excuse that the debtor was out, and later that the debtor had moved.

These and other undisputed details set forth in the bank's response convince me that the debtor knew he owed a substantial debt to the bank, deliberately attempted to avoid service of the lawsuit filed against him, and deliberately withheld this claim from his bankruptcy attorney when he filed in January of 1986. I conclude that this concealment was in the mistaken belief that he had avoided liability under the lawsuit by avoiding actual service and that his discharge would extinguish even the undisclosed debt.

The foregoing inference is fortified by the debtor's conduct after his admitted discovery in July 1986 (the seventh month of his eighteen-month bankruptcy) that the $14,000 default judgment had been entered against him six years earlier. Had he truthfully believed he then owed nothing, he would have turned to either his bankruptcy lawyer or his Michigan attorney for assistance and both counsel would have told him to immediately schedule the debt in his then pending Florida bankruptcy and discharge it. His failure to take any action in the bankruptcy case until 13 months later convinces me that he said nothing to his bankruptcy attorney in Florida until nearly 13 months later when this present motion was filed and that he did not tell his Michigan attorney that he had a pending bankruptcy case. The only plausible explanation for this conduct is that he thought his bankruptcy discharge would extinguish the unlisted and undisclosed debt.

The omission of this claim from the debtor's original bankruptcy schedules and from all subsequent proceedings in that case could not have resulted from oversight. The amount, compared with this debtor's other obligations, was a mountain which could not have been overlooked. Had he candidly and honestly disclosed to his bankruptcy attorney the circumstances of his debt to the bank and the bank's effort to effect service upon him in Michigan, it is certain that the attorney would have insisted that the debt be scheduled and discharged. The circumstances before me are consistent only with the finding that the omission of this claim was not inadvertent but by the debtor's intentional design to defeat the bank's claim.

The debtor's motion to reopen this case is, therefore, denied. The debtor's motion to set aside his own discharge (in order that a new discharge could be entered extinguishing the debt to the bank) is denied for the same reason.