In re Robyn H. **DEUTSCH–SOKOL, Debtor.**

**Robyn H. Deutsch–Sokol, Plaintiff–Appellant,**

v.

**Northside Savings Bank, Defendant–Appellee.**

**Bankruptcy No. 95–21641(ASH). No. 02 Civ. 5433(WCC).**

United States District Court, S.D. New York.

March 5, 2003.

Robyn H. Deutsch–Sokol, Scarsdale, NY, Pro Se.

Malen & Associates, P.C., Attorneys for Defendant–Appellee, Westbury, NY, Paul W. Mahler, Of Counsel.

### OPINION AND ORDER

WILLIAM C. CONNER, Senior District Judge.

Plaintiff-appellant Robyn H. Deutsch–Sokol appeals to this Court from an oral Order (the "Order") entered February 5, 2002 by the Bankruptcy Court (Honorable Adlai S. Hardin, Jr., U.S.B.J.), denying appellant's motion to reopen her Chapter 7 bankruptcy case to amend her scheduled list of creditors to include a judgment debt owed to defendant-appellee Northfork Bank f/k/a Northside Savings Bank ("NFB"). For the reasons that follow, this Court reverses the Order of the Bankruptcy Court and remands this case to Judge Hardin for further proceedings consistent with this Opinion.

### BACKGROUND

The following facts are taken from the Record on Appeal and the parties' briefs, and are undisputed unless otherwise noted. On or about May 31, 1990 NFB obtained a judgment against appellant in the amount of $73,755.44 ("NFB debt"). (Appellee Br. at iv.) In an unrelated action, a foreclosure proceeding was brought against appellant by Citibank and Anchor Savings Bank, who held the first and second mortgages on appellant's residence. (Appellant Br. at 1.) Thereafter, appellant filed for bankruptcy under Chapter 11 on

September 5, 1995, with the assistance of attorney Steven M. Schafer. According to appellant, she informed Schafer of all known creditors, including NFB. (*Id.*) However, Schafer failed to include NFB on the scheduled list of creditors for the original Chapter 11 bankruptcy. (*Id.*) Upon the filing of the bankruptcy petition the foreclosure proceeding was stayed. On September 14, 1995 appellant's bankruptcy proceeding was converted to a Chapter 7 liquidation. (Appellant Br. at 2.) Again Schafer failed to include NFB on the scheduled list of creditors that was copied into the Chapter 7 proceeding despite his assurances that he would amend the schedule. (Appellant Resp. Br. at 2.) It was determined by the trustee of the estate that there were no assets for distribution and on January 22, 1996, pursuant to the Bankruptcy Court's general discharge Order, all of appellant's pre-petition debts were discharged. (*Id.*)

On February 23, 1999 NFB seized $15,039.87 from appellant's bank account and has also attempted to garnish appellant's wages to satisfy the May 31, 1990 judgment. (*Id.*) Appellant maintains that although NFB was not listed as a scheduled creditor it was nevertheless on notice of the filing of the bankruptcy proceeding.[1] Thus, according to appellant, the Bankruptcy Court should have permitted her to reopen her bankruptcy proceeding to include NFB on the original list of creditors, and discharged the NFB debt. NFB argues that it had no notice that the foreclosure action was stayed nor that a bankruptcy case was filed. (Appellee Br. at iv.)

On February 5, 2002, appellant moved the Bankruptcy Court for an Order re-opening the Chapter 7 case to amend the scheduled list of creditors to include the NFB debt. Following a hearing before Judge Hardin on February 5, 2002, the Bankruptcy Court denied appellant's motion. Appellant appeals from the Bankruptcy Court's denial of its motion to re-open the Chapter 7 proceeding to permit the amendment of appellant's original scheduled list of creditors to include an additional debt that was due and owing to NFB or in the alternative to discharge the debt as a matter of law because appellant had a no-asset, no-distribution and no-bar-date estate.[2] (Appellant Br. at iv.) NFB responds that the Bankruptcy Court properly denied the motion as NFB had neither actual nor constructive notice knowledge of appellant's bankruptcy case. (Appellee Br. at iv.)

## DISCUSSION

### I. *Appellate Jurisdiction*

Before considering the merits of the appeal, this Court must first consider whether it has appellate jurisdiction over the matter. NFB argues that appellant's notice of appeal was not timely filed and therefore this Court does not have jurisdiction to review the Bankruptcy Court's Order denying appellant's motion to re-open. (Appellee Br. at 1.) Fed. R. Bankr.P. 8001(a) requires that the notice of appeal from a final bankruptcy order to the district court must be filed within the time allowed by Fed. R. Bankr.P. 8002. Rule 8002(a) mandates filing the notice of appeal "within 10 days of the date of the entry of the judgment, order, or decree appealed from." Failure to file the notice of appeal within the ten-day period is

---

**1.** Appellant claims that NFB was on constructive notice of the bankruptcy proceeding as it was served with notice of the automatic stay with respect to the foreclosure action. (Appellant Br. at 2.)

**2.** Additionally, appellant requests that the $25,000 in seized funds, including interest, be returned.

strictly enforced, and the deadline is jurisdictional in nature. *In re New York Int'l Hostel, Inc.,* 194 B.R. 313, 316 (S.D.N.Y. 1996); *Twins Roller Corp. v. Roxy Roller Rink Joint Venture,* 70 B.R. 308, 310 (S.D.N.Y.1987). *In re Hotel Syracuse, Inc.,* 154 B.R. 13, 15–16 (N.D.N.Y.1993). As the February 5, 2002 Order was entered on February 7, the ten-day period for filing the notice of appeal would have expired on February 17. However, February 17, 2002 was a Sunday and February 18 was President's Day, a federal holiday. Under the time computation scheme in Fed. R. Bankr.P. 9006(a), the time for appeal was extended to February 19, 2002. Appellant did in fact file her Notice of Appeal on February 19, 2002. Consequently this Court has jurisdiction to entertain appellant's appeal.

## II. *Appellant's Motion to Reopen: The Standard*

 The court reviews a bankruptcy court's conclusions of law *de novo,* and its findings of fact for clear error. *Lebovits v. Scheffel,* 101 F.3d 272, 276 (2d Cir.1996). Preliminarily, the court notes that a "desire to amend 'a schedule to include an additional creditor and, thus, accurately reflect all debts owed,' generally 'constitutes sufficient cause to reopen' a no asset bankruptcy case." *In re Candelaria,* 121 B.R. 140, 142 (E.D.N.Y.1990). This is because "[t]he Bankruptcy Code places a premium on scheduling all creditors ..." *Id.* at 140. Significantly, "In the vast majority of cases, a debtor's motion to reopen is prompted of course, by his desire to discharge the omitted debt. Absent some harm or prejudice to the omitted creditor, this motive is cited approvingly by bankruptcy courts, since it will accord relief to the debtor." *Id.*

Thus, numerous courts have held that motions to reopen no asset cases to list omitted creditors should be liberally granted unless: (1) the omission was the result of fraud, recklessness or intentional design on the part of the debtor, or (2) reopening would prejudice the creditor in two protected areas, i.e., its right to participate in a dividend and its right to obtain a determination of dischargeability.

*Id.* (citing *Matter of Baitcher,* 781 F.2d 1529, 1534 (11th Cir.1986); *In re Rosinski,* 759 F.2d 539, 541 (6th Cir.1985); *Matter of Stark,* 717 F.2d 322, 323 (7th Cir.1983)).

With respect to the first criterion, we find that because appellant's attorney was informed by appellant of an additional creditor but failed to list such creditor, this was an inadvertent omission that should not affect appellant's attempt to reopen her Chapter 7 proceeding to include NFB as an additional creditor. *See In re Shannon,* 126 B.R. 900 (Bankr.S.D.Fla.1991). With respect to the issue of whether a reopening would prejudice NFB, the Court begins its analysis with a recitation of the applicable provisions of the Bankruptcy Code, specifically, 11 U.S.C. § 523 because the right to participate in a dividend and the right to obtain a determination of dischargeability are at the heart of the exceptions to discharge provided in § 523(a). *See In re Moyette,* 231 B.R. 494, 498 (E.D.N.Y.1999); *In re Candelaria,* 121 B.R. at 142.

11 U.S.C. § 727(b) provides in pertinent part that "[e]xcept as provided in § 523 of this title, a discharge under subsection (a) of this section discharges the debtor from *all debts that arose before the date of the order for relief under this chapter.*" Because appellant's debt to NFB arose on or about May 31, 1990, long before the filing of her bankruptcy on September 5, 1995, the debt was discharged by the Bankruptcy Court's January 22, 1996 general discharge Order, unless the debt falls within

the purview of § 523. Section 523 provides in relevant part as follows:

(a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt—

(3) neither listed nor scheduled under section 521(1) of this title, with the name, if known to the debtor, of the creditor to whom such debt is owed, in time to permit—

(A) if such debt is not of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim, unless such creditor had notice or actual knowledge of the case in time for such timely filing; or

(B) if such debt is of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim and timely request for a determination of dischargeability of such debt under one of such paragraphs, unless such creditor had notice or actual knowledge of the case in time for such timely filing and request.

 Paragraphs (2), (4) and (6) of § 523(a) specify debts obtained by false pretenses, fraud or willful and malicious injury. As there is no indication that appellant's debt to NFB falls within the ambit of these provisions, we turn to the applicability of § 523(a)(3)(A). "The question of dischargeability of an unlisted debt is tied to the fact of a claims deadline." *In re Walker*, 195 B.R. 187, 196 (Bankr. D.N.H.1996). That is, unless an unlisted creditor was precluded from filing a timely proof of claim, it is irrelevant whether the creditor had notice or knowledge of the bankruptcy proceeding.[3] *See In re Herzig*, 238 B.R. 5, 8 (E.D.N.Y.1998). Proofs of claim must generally be filed "not later than 90 days after the first date set for the

meeting of creditors." Fed. R. Bankr.P. 3002(c). Subsection (5) of the rule creates an exception, however, for what are commonly referred to as "no-asset" cases. Where it is determined that a debtor lacks assets sufficient to pay any dividend to his creditors, Rule 2002(e) provides for notice of that fact to be given to scheduled creditors and for them to be advised that they need not file any present proof of claim. If, at some future point—even after discharge—the trustee discovers estate assets sufficient to pay creditors a dividend, Rule 3002(c)(5) requires that creditors receive new notice and be given 90 days from that date to file proofs of claim. The sole purpose of a proof of claim is to allow the creditor to assert a right to participate in the distribution of assets. *See In re Mendiola*, 99 B.R. 864, 867 (Bankr.N.D.Ill. 1989). However, in a Chapter 7 no-asset case such as this, the right to file a proof of claim is initially "meaningless and worthless" as there are no assets to which to lay claim. *Id.* For this reason, Rule 2002(e) permits creditors to be advised that they need not file proof of claim unless and until they receive notice that sufficient assets have been discovered to permit payment of a dividend. As a result, various courts have recognized that in a Chapter 7 no-asset case, the time for filing a claim does not expire within 90 days of the creditors' meeting but rather remains open indefinitely until non-exempt assets are found.

 The import of the foregoing is that "[i]n a Chapter 7 no-asset case, Section 523(a)(3)(A) does not apply because no bar date is set for filing claims." *McMahon v. Harmon*, 213 B.R. 805, 808 (Bankr.D.Md. 1997); *accord Judd v. Wolfe*, 78 F.3d 110,

---

**3.** Thus NFB's argument that it had no notice of appellant's bankruptcy proceeding is im-

material.

114 (3d Cir.1996) ("Because this is a 'no-asset' Chapter 7 case, the time for filing a claim has not, and never will, expire unless some exempt assets are discovered; thus, section 523(a)(3)(A) cannot be applied ..."); *In re Beezley*, 994 F.2d 1433, 1434 (9th Cir.1993) ("After ... a [no-asset, no-bar-date Chapter 7] case has been closed, dischargeability is unaffected by scheduling ..."); *In re McDaniel*, 217 B.R. 348, 356 (Bankr.N.D.Ga.1998) ("[T]o the extent that an assetless liquidation is involved, the lack of any claims bar date in these proceedings makes Code section 523(a)(3)(A) ... inapplicable."); *In re Walker*, 195 B.R. at 200 ("[L]isting an omitted creditor on the schedules in a no-asset case has no legal significance per se with regard to the dischargeability of a creditor's claim ..."); *In re Costa*, 172 B.R. 954, 959 (Bankr.E.D.Cal.1994) ("[W]here there are no assets for the trustee to liquidate and where no deadline for filing proofs of claim is fixed, it is never untimely to file a proof of claim, with the result that all unscheduled debts (except section 523(a)(2), (4), and (6) debts) are discharged."); *In re Karras*, 165 B.R. 636, 639 (N.D.Ill.1994) ("In a no-asset case, the failure to list a debt does not transform a dischargeable liability into a nondischargeable one."); *In re Thompson*, 152 B.R. 24, 27 (E.D.N.Y.1993) ("Because no assets have been discovered in the estate of the debtor in this case, section 523(a)(3)(A) does not preclude the discharge of the debt ..."); *In re Thibodeau*, 136 B.R. 7, 9 (Bankr.D.Mass.1992) (holding section 523(a)(3)(A) "does not come into play in a no-asset Chapter 7 case ... that was closed without a bar date for filing of claims ever having been set").

In view of these cases, we fail to find any prejudice to NFB if appellant were permitted to add NFB's debt to appellant's scheduled list of creditors. If the motion to amend were granted and NFB's debt added to the others which were scheduled, NFB would have the same opportunity to file a timely notice of claim as any other creditor in the event any assets are discovered. *See In re Moyette*, 231 B.R. at 499. Thus, reopening this case could afford relief to appellant without prejudicing the added creditor.

Because section 523(a)(3)(A) was inapplicable to the NFB debt, and because there is no indication that that debt is of a kind specified under section 523(a)(2), (4) or (6), the NFB debt was discharged under the Bankruptcy Court's January 22, 1996 general discharge Order.

## CONCLUSION

For the reasons stated above, it is hereby

**ORDERED,** that the Bankruptcy Court's Order, dated February 5, 2002, denying appellant's motion to reopen the Chapter 7 bankruptcy case is reversed; it is further

**ORDERED,** that the appellant's motion to reopen the Chapter 7 bankruptcy case to add the debt to NFB to its schedules is granted; and it is further

**ORDERED,** that this matter is remanded to the Bankruptcy Court for further proceedings consistent with this Opinion.

**SO ORDERED.**